MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2026 ME 59
Docket:         Cum-26-288
Argued:         July 1, 2026
Decided:        July 10, 2026

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

JANE GILBERT et al.

v.

SECRETARY OF STATE

PER CURIAM

[¶1]  Protect Girls Sports in Maine (the committee), a registered ballot question committee, appeals from a judgment of the Superior Court (Cumberland County, *Cashman, J.*) affirming the decision of the Secretary of State invalidating a petition for initiated legislation entitled, "An Act to Designate School Sports Participation and Facilities by Sex."[1]  The question before us is whether the Secretary properly invalidated the signatures collected by four petition circulators who do not reside in Maine and who did not, in their

---

[1]  We acknowledge the briefs filed by amici curiae (1) Initiative and Referendum Institute and Dane Waters, and (2) Sofia Pride, Jason McNeill, Matthew Couture, and Molly Curtis.

2

circulator affidavits submitted with the petition signatures, consent to the jurisdiction of the Maine courts.[2]  We affirm.

## I. BACKGROUND

[¶2]  On February 2, 2026, 79,692 signatures were submitted to the Secretary in support of the legislation that the petition sought to initiate.[3]  On March 17, 2026, the Secretary issued a written determination of the validity of the petition.  The Secretary found that 71,033 signatures were valid, exceeding the 67,682 signatures required.  Accordingly, the Secretary determined that the petition was valid.

[¶3]  On March 27, 2026, Jane Gilbert, Mark Sayre, and Kaitlin Webber (collectively Gilbert) filed in the Superior Court a petition for review of the Secretary's decision.  *See* 21-A M.R.S. § 905(2) (2026); M.R. Civ. P. 80C.  On April 1, 2026, the committee moved to intervene, and on April 13, the court granted the committee's motion.

---

[2]  We do not reach the committee's arguments that other groups of signatures should have been validated because, even if the committee were to prevail on these arguments, there still would not be a sufficient number of valid signatures to support the petition.  *See Hart v. Sec'y of State*, 1998 ME 189, ¶ 5, 715 A.2d 165.  Because we affirm the Secretary's determination that there is not a sufficient number of valid signatures, we also do not reach Gilbert's arguments that additional groups of signatures should have been invalidated.

[3]  February 2, 2026, was the constitutionally mandated deadline for initiative petitions to be submitted to the Secretary for consideration by the electors in the 2026 election.  *See* Me. Const. art. IV, pt. 3, § 18(1).

[¶4]  Gilbert raised twenty-one challenges to the petition.  Included was Challenge 3, in which Gilbert challenged the signatures gathered by four petition circulators who failed to affirm under oath that they are either Maine residents or are willing to submit to Maine's jurisdiction for purposes of any investigation into alleged violations of Maine law.  Over fifteen hundred signatures were collected by those four circulators.

[¶5]  The Secretary conceded several of Gilbert's challenges, including Challenge 3, i.e., she conceded that the signatures collected by the four out-of-state circulators who failed to check the box on their circulator affidavits consenting to the jurisdiction of the State of Maine should have been invalidated.  On April 24, the court remanded the matter to the Secretary for further proceedings "which may include correcting the concessions identified herein, taking new evidence, and developing further findings of fact as necessary."

[¶6]  On May 12 and 13, 2026, the Chief Deputy Secretary of State held an evidentiary hearing.  One of the circulators at issue in Challenge 3 testified at this hearing, and an updated affidavit from that circulator, in which she consented to the jurisdiction of Maine, was admitted in evidence.

4

[¶7] On May 21, 2026, the Chief Deputy issued a recommended decision determining that, as a result of several of the challenges, the petition had not received the required number of valid signatures. Included in the recommended decision were the following findings of fact.

[¶8] Four petition circulators who reside out of state did not, in their circulator affidavits submitted with the petition, check the box agreeing to the conditions required of out-of-state circulators, including consenting to the jurisdiction of the Maine courts. The Chief Deputy found that the failure of the circulator who testified at the hearing to timely agree to the conditions for out-of-state circulators was not inadvertent; rather, at the time of executing her affidavit, the circulator was concerned that checking that box might require her to appear in court during midterm season, so she wanted to get a better understanding of that requirement before agreeing to it. No one explained this provision, and she executed the affidavit without checking that box. On May 6, 2026, well after the petition was submitted to the Secretary in February 2026, the circulator executed a new affidavit in which she agreed to the conditions required of an out-of-state circulator.

[¶9] Ultimately, the Chief Deputy recommended that all signatures collected by the four nonresident petition circulators who did not consent to

the jurisdiction of Maine in their affidavits submitted to the Secretary with their collected signatures should be invalidated. Because 1,520 signatures fell into this category, the result was that the petition was short of the required number by 532 signatures. On May 26, 2026, the Secretary adopted the recommended decision as the final decision in the matter.

[¶10] On May 29, 2026, at the request of the committee, the Superior Court resumed jurisdiction over the Rule 80C petition for review. On June 11, 2026, the court denied the petition for review and affirmed the final decision of the Secretary. Both the committee and Gilbert appealed. *See* 21-A M.R.S. § 905(3); M.R. App. P. 2B(c)(1), 2C(a)(1)-(2).

## II. DISCUSSION

[¶11] "When, as here, the Superior Court acts in its intermediate appellate capacity pursuant to Rule 80C, we review directly the Secretary of State's decision for errors of law, findings not supported by the evidence, or an abuse of discretion." *Reed v. Sec'y of State*, 2020 ME 57, ¶ 12, 232 A.3d 202.

[¶12] The question before us is whether the Secretary had the legal authority to invalidate signatures collected by out-of-state petition circulators who did not, at the time the petitions were submitted to the Secretary, take an oath consenting to Maine jurisdiction. We hold that the Secretary was not only

6

authorized but was constitutionally bound to impose and enforce the oath requirement.[4]

## A. The Secretary is obligated to adhere to the Maine Constitution.

[¶13]  The Secretary, who is a constitutional officer, *see* Me. Const. art. V, pt. 2, took an oath to support the Maine Constitution.  *See id.* art. IX, § 1; *Laprel v. Going*, 2014 ME 84, ¶ 16, 96 A.3d 67.  It is thus her duty to adhere to the dictates of the Maine Constitution.  *Cf. Shawmut Mfg. Co. v. Town of Benton*, 123 Me. 121, 127, 122 A. 49, 52 (1923) (stating that the "intentional ignoring by the local officers of the constitutional provisions which they swore that they would uphold" would "tend to dim that justice which is the end of government"); *State ex rel. Anderson v. Shanahan*, 327 P.2d 1042, 1046-47 (Kan. 1958) (holding that the Kansas Secretary of State was compelled to follow the provisions in the state constitution for placing a proposed amendment to the state constitution on the ballot because the secretary, as a constitutional officer, was "duty bound

---

[4] To the extent that the committee argues that the remedy imposed by the Secretary to enforce the oath requirement—invalidation of the signatures collected by the circulators who did not consent to jurisdiction—was improper, "it is well established that the Secretary has the authority to invalidate petitions *in toto* when the circulator has not complied with statutory or constitutional requirements."  *Me. Taxpayers Action Network v. Sec'y of State*, 2002 ME 64, ¶ 12, 795 A.2d 75; *see, e.g.*, *Jones v. Sec'y of State*, 2020 ME 113, ¶¶ 8, 35, 238 A.3d 982 (invalidating signatures because the circulator was not a registered voter); *Hart*, 1998 ME 189, ¶¶ 5-6, 715 A.2d 165 (invalidating signatures because circulators were not Maine residents); *Palesky v. Sec'y of State*, 1998 ME 103, ¶¶ 10-11, 711 A.2d 129 (invalidating petitions for defects in the oaths taken by the circulators).

to comply fully" with the provisions of the state constitution, "which is the fundamental law of the people").

[¶14]  The Maine Constitution requires that circulators of initiative petitions be Maine residents.  Me. Const. art. IV, pt. 3, § 20.  The Constitution thus compels the Secretary, "the constitutional officer entrusted with administering . . . the laws pertaining to the direct initiative process," *Reed*, 2020 ME 57, ¶ 18, 232 A.3d 202, to require that petition circulators be Maine residents.  *See Shawmut Mfg.*, 123 Me. at 128, 122 A. at 52 ("Constitutional provisions are not self-executing; they have to be accomplished through human agency, imperfect as the means may be.  But, fallible and finite though these agents are, there must be respect by them for the Constitutions, else they would have a government of law run riot.").

[¶15]  The Legislature has also given effect to this constitutional imperative by enacting 21-A M.R.S. § 903-A(4)(C) (2026), which requires petition circulators to execute affidavits including "[t]hat the circulator was a resident of the State and a registered voter in the State at the time of circulating the petition."  Just as the Secretary has a duty to comply with the Constitution, she also must comply with statutes that do not violate the Constitution.  *See Opinion of the Justices*, 343 A.2d 196, 202 (Me. 1975) (noting that if a statute

were constitutional, the Governor and Executive Council would have "the duty to proceed" under the statute); *Burkett ex inf. Leach v. Robie*, 137 Me. 42, 47, 15 A.2d 71, 74 (1940) (stating "[t]he secretary of state cannot be required to violate [her] statutory duty").

[¶16]  Hence, absent any superseding authority, the Secretary was compelled by her oath and by Maine law to require circulators to file affidavits averring that they were Maine residents and voters.

**B.    The only exception to the Secretary's duty to obey Maine law is if federal law supersedes the state mandate.**

[¶17]  The only exception to the Secretary's duty to comply fully with the Maine Constitution and Maine statutes is when the relevant provisions of Maine law are superseded by federal law.  *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

[¶18]  Although we previously concluded that the provision in the Maine Constitution requiring circulators to be Maine residents did not violate the U.S. Constitution, *see Hart v. Sec'y of State*, 1998 ME 189, ¶¶ 6, 13, 715 A.2d 165; *Jones v. Sec'y of State*, 2020 ME 113, ¶ 33, 238 A.3d 982, subsequently, We the People PAC, a political action committee, and other plaintiffs filed an action in

the U.S. District Court for the District of Maine seeking declaratory and injunctive relief prohibiting the Secretary "from enforcing certain Maine State laws that regulate the circulation of ballot initiative petitions." *We the People PAC v. Bellows*, 519 F. Supp. 3d 13, 16 (D. Me. 2021), *aff'd*, 40 F.4th 1 (1st Cir. 2022). As relevant here, We the People PAC sought a declaratory judgment that 21-A M.R.S. § 903-A, which requires, inter alia, that circulators of initiative petitions attest that they are Maine residents, violated the First and Fourteenth Amendments "as applied to out-of-state circulators willing to submit to the jurisdiction of the State of Maine for purposes of investigation and/or prosecution of any petition filed by the out-of-state circulator." Complaint for Declaratory and Injunctive Relief at 24, *We the People*, 519 F.Supp.3d 13 (No. 1:20-cv-00489-JAW), 2020 WL 13740452.

[¶19] On February 16, 2021, the District Court granted a motion by We the People for a preliminary injunction enjoining the Secretary from enforcing the residency requirement of section 903-A as to out-of-state circulators who "first submit to the jurisdiction of the state of Maine for any investigation and/or prosecution of alleged violations of Maine's election code." *We the People*, 519 F. Supp. 3d at 53. The District Court issued its order on the basis that We the People was likely to succeed on its claim that the residency

requirement for petition circulators violates the First Amendment to the federal constitution. *Id.* at 53. The First Circuit affirmed the District Court's order. *We the People PAC v. Bellows*, 40 F.4th 1, 27 (1st Cir. 2022).

[¶20] Following the First Circuit's affirmance of the preliminary injunction, on February 9, 2023, the District Court issued a consent order and judgment agreed to by the parties. The order permanently enjoined the Secretary

> from enforcing 21-A M.R.S. § 903-A and Me. Const., art. IV, pt. 3, § 20, to the extent they require that initiative or people's veto petitions only be circulated by Maine residents, against circulators who (a) agree to submit to the personal jurisdiction of Maine for purposes of any investigation or prosecution of any alleged violation of Maine law with respect to initiative or people's veto petitions; (b) maintain up-to-date contact information with the Maine Secretary of State's office, by whatever means identified by the Secretary of State's office, for the duration of any petition drive for which they circulat[e] petitions, which drive includes the collection of signatures and review of those signatures by the Secretary of State's office; and (c) are responsive to requests for information from the Secretary of State's office for the duration of the petition drive, as defined above.

[¶21] In sum, the Secretary is subject to a permanent federal injunction precluding her from enforcing the Maine Constitution's residency requirement except as to those non-Maine residents who, inter alia, do not agree to submit to the personal jurisdiction of Maine.

**C.** **Consistent with her oath, by requiring nonresident circulators to consent to Maine jurisdiction, the Secretary complied with the Maine Constitution and statutes to the extent she was able to do so.**

[¶22] Under our federalist system, the federal courts craft any injunction that precludes a state officer from enforcing a provision in a state law as narrowly as possible so as to intrude as minimally as possible on the state officer's duty to comply with that law. *See Clark v. Coye*, 60 F.3d 600, 603-04 (9th Cir. 1995).[5] Thus, the "normal rule" in the federal courts is to enjoin only the unconstitutional applications of a challenged state law. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006) (quotation marks

---

[5] The Ninth Circuit in *Clark* stated:

> Due to concerns of comity and federalism, the scope of federal injunctive relief against an agency of state government must always be narrowly tailored to enforce federal constitutional and statutory law only. This is critical because a federal district court's exercise of discretion to enjoin state political bodies raises serious questions regarding the legitimacy of its authority. Thus, in reviewing a district court's injunction against an agency of state government, we scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' federal constitutional and statutory rights but does not require more of state officials than is necessary to assure their compliance with federal law.

60 F.3d at 603-04 (citations and quotation marks omitted). *See also Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982) (stating that permanent injunctive relief from a constitutional violation "must be no broader than necessary to remedy the constitutional violation"); *EagleMed LLC v. Cox*, 868 F.3d 893, 905 (10th Cir. 2017) ("In fashioning injunctive relief against a state agency or official, a district court must ensure that the relief ordered is 'no broader than necessary to remedy the [federal] violation.'" (quoting *Toussaint v. McCarthy*, 801 F.2d 1080, 1086-87 (9th Cir. 1986))); *cf. Younger v. Harris*, 401 U.S. 37, 44 (1971) (stating that "Our Federalism" represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States" (quotation marks omitted)).

12

omitted). On the other side of the coin, the Secretary, like the Justices of this Court who take the same oath as the Secretary, is duty-bound to adhere to the Maine Constitution to the extent not precluded by the federal injunction. *See In re Apportionment of House of Representatives*, 315 A.2d 211, 218-19 (Me. 1974), *amended by* 316 A.2d 508 (Me. 1974).

[¶23] *In re Apportionment* involved a conflict between federal law and the Maine Constitution as to legislative apportionment. *Id.* at 213. In that situation, we stated that "we consider that it is our sworn duty to be governed by the Constitution of this State to the fullest extent reasonably possible consistently with recognition of the Constitution of the United States as the Supreme law of the land" and noted that we could not "discard entirely" the provisions of the Maine Constitution relating to legislative apportionment "and proceed unrestrained except as we may be controlled by the Constitution of the United States." *Id.* at 218-19.

[¶24] The injunction and consent order issued by the District Court did not prohibit the Secretary from enforcing the residency requirement against petition circulators who do not consent to personal jurisdiction in the state. Indeed, when the First Circuit concluded that a flat ban on nonresident circulators was likely unconstitutional under the federal constitution because

the ban was not narrowly tailored, the Court of Appeals observed that "available here" was "requiring out-of-state circulators to provide up-to-date contact information and to submit to legal process in the state." *We the People*, 40 F.4th at 21; *see also Pierce v. Jacobsen*, 44 F.4th 853, 862-63 (9th Cir. 2022) (noting that multiple United States Courts of Appeals have concluded that requiring petition circulators to consent to a state's jurisdiction met the test of a narrowly tailored means of accomplishing the same interest as residency requirements); *Chandler v. City of Arvada*, 292 F.3d 1236, 1244 (10th Cir. 2002) (approving the requirement "as a prerequisite to circulating an initiative . . . petition" that the prospective circulator agree to submit to jurisdiction); *Krislov v. Rednour*, 226 F.3d 851, 866 n.7 (7th Cir. 2000) ("[T]o ensure the integrity of the process, States might require non-citizens to register with the Board of Elections and agree to submit to the jurisdiction of Illinois courts.").

[¶25]  Thus, to follow the Maine Constitution to "the fullest extent reasonably possible," *see In re Apportionment*, 315 A.2d at 218, the Secretary is obligated to enforce the Maine Constitution's residency requirement against those petition circulators not covered by the consent order, including out-of-state circulators who do not consent to Maine jurisdiction. *See id.* at 219 (noting, in addressing a federal-state conflict, that the Court was able

14

"reasonably and substantially to accommodate the basic spirit and a substantial part of the letter of the Maine Constitution" to the requirements of federal law). Here, the "basic spirit" of the Maine Constitution's residency requirement includes, as we said in affirming this requirement against a First Amendment challenge, "provid[ing] the State with jurisdiction over the circulators and mak[ing] the circulators easier to locate if there is a question as to the validity of the signatures collected." *Hart*, 1998 ME 189, ¶ 13, 715 A.2d 165. The requirement that nonresident circulators agree to submit to Maine jurisdiction advances this constitutional purpose.[6]

[¶26]  In sum, the requirement that out-of-state circulators consent to jurisdiction is not, as the committee argues, a novel rule created by the Secretary without enabling authority.  Rather, by requiring out-of-state circulators to take an oath that they will submit to the jurisdiction of Maine, the Secretary is complying with the Maine Constitution and Maine statutes to the extent not precluded by federal restrictions.  Her authority—and her duty—to impose the oath comes from the Maine Constitution and her own oath to adhere

---

[6] The committee asks us to overturn our decision in *Hart*, 1998 ME 189, ¶¶ 6-13, 715 A.2d 165, in which we held that the constitutional requirement that petition circulators be residents did not violate the First and Fourteenth Amendments.  Given that the Secretary is precluded from enforcing any aspect of the residency requirement except the limited requirements in the consent order, it is unclear what the concrete impact of such a ruling would be, and we decline to do so.

to its provisions. The Secretary thus did not err by requiring petition circulators to consent by affidavit to Maine jurisdiction and by invalidating the signatures collected by petition circulators who have not so consented.

**D.** **The Secretary properly invalidated the signatures collected by the petition circulator who did not consent to jurisdiction at the time the signatures were submitted.**

[¶27] The committee argues that even if the Secretary were permitted to invalidate the signatures collected by the three nonresident circulators who have never consented to jurisdiction, she could not do so as to the signatures collected by the circulator who consented to jurisdiction months after the circulator's submission of the collected signatures and months after the deadline provided in the Maine Constitution for the filing of the initiative petition. *See* Me. Const. art. IV, pt. 3, § 18(1); *supra* n.2. We disagree.

[¶28] Neither the permanent injunction nor the consent order includes a provision dictating when nonresident circulators must agree to jurisdiction so as to enjoy the protection of the injunction. Hence, the State is not precluded by the injunction or the consent order from setting its own deadline.[7] The

---

[7] *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction . . . must . . . state its terms specifically."); 11A Wright & Miller's Federal Practice & Procedure § 2955 (3d ed. 2013), Westlaw (database updated April 2026) (stating that Rule 65(d) "strongly suggests that only those acts specified by the order will be treated as within its scope and that no conduct or action will be prohibited by implication").

committee asserts that the omission of a timing specification in the consent order signifies that the federal court concluded that the timing of the submission to jurisdiction was "not critical." The omission of a timing specification only underscores why the State and the Secretary may set the date for consenting to jurisdiction as the time that the signatures and circulator affidavits are submitted.

[¶29] If a state regulation imposes a severe burden on the signature collecting process, then a strict scrutiny standard of review applies to that regulation, pursuant to which the regulation is rejected unless the interest advanced in the regulation is compelling and the regulation is narrowly tailored to advance that interest. *See Jones*, 2020 ME 113, ¶ 24, 238 A.3d 982; *Pierce*, 44 F.4th at 859-60; *We the People*, 40 F.4th at 13-14. The Supreme Court has identified two non-exhaustive factors for when a regulation imposes a severe burden: when it (1) "limits the number of voices carrying the initiative proponent's message and the size of the audience the proponent can reach" or (2) "makes it less likely a proponent will get enough signatures to place the issue on the ballot, thereby limiting the ability to make the issue the focus of statewide discussion." *Pierce*, 44 F.4th at 860 (citing *Meyer v. Grant*, 486 U.S. 414, 422–23 (1988)) (quotation marks omitted); *see also Campbell v. Buckley*,

203 F.3d 738, 745 (10th Cir. 2000) (noting that "strict scrutiny is applied where the government restricts the overall quantum of speech available to the election or voting process").

[¶30]   If a regulation does *not* impose a severe burden, then a less exacting standard applies, pursuant to which the regulation is upheld as long as the governmental interest is important and the regulation is nondiscriminatory and reasonable.  *See Jones*, 2020 ME 113, ¶ 24, 238 A.3d 982; *We the People*, 40 F.4th at 13-14; *Pierce*, 44 F.4th at 860; *see also Knutson v. Dep't of Sec'y of State*, 2008 ME 129, ¶ 11, 954 A.2d 1054 (citing the "U.S. Supreme Court's consistent holding that States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with the election process generally" and stating that the Supreme Court has "upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself" (quotation marks omitted)).  In *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 188-89, 199-200 (1999), the Supreme Court noted that under its precedent, a requirement that circulators execute affidavits including, inter alia, their name and address, "which must be met only after circulators have completed their conversations with electors, exemplifies the type of regulation" deemed acceptable.

18

[¶31]  Under these legal principles, the less exacting standard of review applies to the Secretary's deadline for filing the affidavit.  The affidavit is filed after the signatures have been collected and thus does not interfere with circulator-voter communications.  Nothing in the record and no logic suggests that this timing makes it less likely that a proponent will obtain sufficient signatures to place the issue on the ballot.

[¶32]  Applying this less exacting standard, the deadline is nondiscriminatory: the same deadline for filing the affidavit applies to all circulators.[8]  21-A M.R.S. § 903-A(4)  (requiring "[a] person who circulates a petition" to execute an affidavit and "file the affidavit with the Secretary of State at the time the petition is filed").  The State has an important interest in ensuring that signatures are valid, and the duty to review that validity has been entrusted to the Secretary.  *See Me. Taxpayers Action Network v. Sec'y of State*,

---

[8]  To the extent that the committee argues that the affidavit requirement itself, as opposed to the timing requirement, is discriminatory, we note as a threshold matter that the committee did not develop this argument in its brief; the argument is thus waived.  *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290.  In any event, the affidavit requirement is not discriminatory—all circulators must file an affidavit.  21-A M.R.S. § 903-A(4) ("A person who circulates a petition shall execute an affidavit . . . .")  The consent to jurisdiction requirement for nonresidents puts nonresident circulators on equal footing with resident circulators.

The committee also alludes to the right to petition under the Maine and U.S. Constitutions but does not develop a substantive argument based on this right.  Hence, any such argument is also waived.  *See Mehlhorn*, 2006 ME 110, ¶ 11, 905 A.2d 290; *see also Wayte v. United States*, 470 U.S. 598, 610 n.11 (1985) ("Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis.").

2002 ME 64, ¶ 12 n.8, 795 A.2d 75 (stating that this Court has "long recognized that the executive officer charged with overseeing the petition process—formerly the Governor, now the Secretary of State—has plenary power to investigate and determine the validity of petitions" (citing *Opinion of the Justices*, 116 Me. 557, 580-82, 103 A. 761, 771-72 (1917)).  The Secretary must make this determination in a very short time.  *See* 21-A M.R.S. § 905(1) (providing the Secretary "30 business days" from the date of filing to determine a petition's validity and issue a written decision).  Allowing ad hoc corrections with no specific deadline after the constitutional deadline for filing the initiative petition would not only effectively undermine the constitutional deadline but would also impose a burden on the Secretary that erodes her ability to fulfill her duties, results in disparate treatment of circulators, and violates our precedent.  *See Opinion of the Justices*, 114 Me. 557, 567, 95 A. 869, 873 (1915) ("A paper that is not a constitutional petition within the [constitutional filing deadline] cannot be made so afterward by adding affidavit or certificate.  To do so would be, in effect, to extend the constitutional limitation of [the deadline].").

[¶33]  As noted above, the Secretary must obey Maine law to the extent she is not precluded from doing so by federal law.  The Maine Constitution authorizes the Legislature to "enact laws not inconsistent with the Constitution

to establish procedures for determination of the validity of written petitions." Me. Const. art. IV, pt. 3, § 22. The Legislature has authorized the Secretary to "establish the form and content of all forms, lists, documents and records required by or necessary to the efficient operation of [Title 21-A]." *See* 21-A M.R.S. § 21 (2026). The Legislature also enacted 21-A M.R.S. § 903-A(4), which requires circulators to file their affidavits with the Secretary "at the time the petition is filed." Thus, this particular timing reflects the Legislature's intent, further authorizing and obligating the Secretary to implement this deadline.

[¶34] In sum, federal law does not preclude this timing requirement— the requirement does not impose a severe burden on core political speech, the requirement advances an important state interest, and the deadline is reasonable and nondiscriminatory. The Secretary has the authority and the duty to implement the Legislature's will and to require the timing of the filing of the affidavits as directed in section 903-A(4).

### III.  CONCLUSION

[¶35] As a result of the Secretary's proper invalidation of the signatures collected by these four circulators, the petition fell below the constitutional

threshold for an initiative petition to be submitted to the voters of Maine. The Secretary thus correctly determined the petition to be invalid.

The entry is:

Judgment affirmed.

---

Timothy C. Woodcock, Esq. (orally), and Janna L. Gau, Esq., Katahdin Law, Bangor, for appellant Protect Girls' Sports in Maine

James G. Monteleone, Esq., Bernstein Shur, Portland, Ben Stafford, Esq., and Tyler L. Bishop, Esq., Elias Law Group LLP, Seattle, Washington, and Christopher D. Dodge, Esq. (orally), Elias Law Group, Washington, D.C., for cross-appellants Jane Gilbert, Mark Sayre, and Kaitlin Webber

Aaron M. Frey, Attorney General, and Jonathan R. Bolton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Secretary of State

Cynthia A. Dill, Esq., Cape Elizabeth, for amici curiae Sofia Pride, Jason McNeill, Matthew Couture, and Molly Curtis

Stephen C. Smith, Esq., John E. Baldacci, Esq., and Carl E. Woock, Esq., Steve Smith Trial Lawyers, Augusta, and Edward D. Greim, Esq., and Katherine E. Mitra, Esq., Graves Garrett Greim LLC, Kansas City, Missouri, for amici curiae Initiative and Referendum Institute and Dane Waters

Cumberland County Superior Court docket number AP-2026-10
FOR CLERK REFERENCE ONLY